Antjuan Brisco
ADC #: 295824
A.S.P.C.: Tucson/Whetstone
P.O. Box 24402
Tucson Arizona 85734-4402

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Antjuan Brisco, | No. 4:20-cv-00260-JGZ |
| Plaintiff, | |
| v. | Plaintiff's Response in |
| Ryan Thornell et al., | Opposition to Defendants |
| Defendant | Motion for Summary |
| | Judgement (Villicana) |

Plaintiff, Antjuan Brisco, hereby responds to Defendant Villicana's motion for summary judgement (DOC. 101). Plaintiff's motion is supported by the following Memorandum of Points and Authorities, his seperate Statement of Facts, and supportive medical documentation of the injury, which is filed herewith and is incorporated here in by reference.

## Memorandum of Points and Authorities

### I. Introduction

Plaintiff's First Amended Complaint seeks monetary damages and legal expenses associated with this Complaint from The Arizona Department of Corrections, and Defendant Villicana (DOC. 40). Plaintiff was subjected to cruel and usual treatment, in violation of the Eight Amendment, Plaintiff asserts that in pursuant to ADC policy, that correctional officers are required to assess medical records and needs of any individual that is visibly disabled to ensure that individual is not being placed at risk, correctional officers are required to use proper transport vehicles consisting of a wheelchair lift to transport inmates in wheelchairs and my not physically remove the inmate from the wheelchair increasing the risk of injury or bodily harm, because of medical knowledge to the extent of their disability or medical condition.

### II. Preliminary Statement of Facts

1. At all relevant times Plaintiff was a "prisoner" in ADC, upon entrance to ADC Plaintiff signed waiver that stated "he was a ward of the state of Arizona, and that ADC will provide adequate standard medical care and safety against the population and/or staff". Subsequently, Plaintiff was injured by Correction Officers while being transported on March 2, 2019 (1). On March 2, 2019, Plaintiff informed medical staff Jody Sweetapple, RN of the injury, which she assessed visually.

Nurse Sweetapple, did not think the injury was serious and advised Plaintiff to submit a Health Needs Request (HNR) if the pain and discomfort continues, and the bruising last for more than 72 hours. Plaintiff, was lead to believe that his injury was not serious (2). On April 2, 2019, Plaintiff began submitting several HNR's concerning the pain, discomfort, and reducing limited Range of Motion (ROM) (see medical attachment) in his right shoulder. By June 4, 2019, Plaintiff had been examined by other nurses pertaining to his injury, they also advised Plaintiff that his right shoulder pain and discomfort would reduce and heal itself over time, they did not refer Plaintiff to see the Unit Provider/Doctor (3). Contradictive to the advise given by Medical Staff that his injury would heal over time, Plaintiff suspected that his injury was far more serious than the Medical Staff was leading him to believe, and the likelihood of the injury healing itself over time was minimum. On June 4, 2019, Plaintiff submitted an Inmate Informal Complaint/Resolution to C.O.III J. Vance (Manzanita Unit) (see attachment Exhaustion). The objective was to exhaust the ADC's Grievance process (4). Plaintiff exhausted the Grievance process that was made available to him (5) (see exhaustion attachment). In October 2019, Plaintiff was assessed by a Provider/Doctor - for the first time - who formed a medical opinion from X-Rays and MRI that Plaintiff had indeed suffered a serious injury to his right shoulder that will possibly need surgery to repair (6). Provider/Doctor referred Plaintiff to offsite Orthopedic Specialist to asses injury.

III.                    Exhaustion
   A.) Step 1: Informal Complaint/Resolution

(1) To begin the Grievance process of ADC one must submit an Inmate Informal Complaint/Resolution (IICR), see Department Order (D.O.) 802.2. Defendant Villicana re-raises the question of exhaustion seeing that the injury occured on March 1, 2019, but Plaintiff did not submit the IICR until June 4, 2019. Furthermore, Defendant exerts that Plaintiff did not complete the process of exhausting the remedies of ADC prior to filing his complaint to be investigated per ADC policy D.O. 802. Standard Grievance Process (see exhaustion attachment) before filing a complaint in a legal setting.
(2) C.O. IV Rick Wood was the Grievance Coordinator at Manzanita Unit admitted in his deposition (Doc. 47-1) "that a prisoner can submitt an IICR once the prisoner becomes aware that he has suffered serious injury, due to the actions of an ADC officer". Plaintiff, filed suit due to the serious nature of the injury, the deliberate neglect for the safety and medical needs of the Plaintiff exhibited by transporting officers (C.O. II Duran and C.O. II Villicana). Any legal action taken without the presence of serious physical injury" would be viewed as "de Minimis, see A.R.S §31-201.01 (L).

   B.) Step 2: Formal Grievance
(3) The Formal Grievance Process is governed by D.O. 802.3. According to D.O. 802.03 §1.4 "The inmate shall submit the Inmate Formal Grievance directly to the Unit C.O. IV Grievance Coordinator (R. Wood). Unfortunately, Mr. Wood did not choose to make himself available to prisoners who needed to submit a grievance.

4 of 12

Thus, Plaintiff was directed to submit his grievance to the Unit C.O. III J. Vance, who forwarded the grievance to C.O. IV Wood to be signed, processed, and logged. Plaintiff did not receive his pink carbon copy for personal documentation, because the grievance had to be signed by C.O. IV Wood prior to returning copy. From that point the Grievance went missing, and never got signed, logged, or processed. Per policy 802 (D.O.) it is the Grievance Coordinator's job duty to keep track and file said Grievance, the plaintiff submitted the grievance and the completion of the process and response in fact is beyond his control if the Grievance Coordinator neglects his duties.

C. Step 3: Grievance Appeal

(4) The Grievance Appeal is governed by D.O. 802.04. According to D.O. 802.04 § 1.1, the inmate is to submit the Grievance Appeal to the C.O. IV (R. Wood) Grievance Coordinator. However, Mr. Wood chooses not to make himself available to receive the Grievance Appeal, so Plaintiff was again directed to submit the Grievance Appeal to C.O. III J. Vance, who was to perform the duties of Mr. Wood, which bends, deviates, and manipulates the policy orders stated in ADC policy D.O. 802 Grievance Process. (5) The Grievance Appeal is the final step to exhaustion in the ADC Grievance process. Per ADC policy, Plaintiff would NOT have been able to submit Grievance Appeal unless the Grievance procedure that was made available to him had been previously exhausted. In the instance the inmate make errors it is the responsibility of the Grievance Coordinator to return the document for corrections, which did not occur so Plaintiff assumed the Grievance Appeal was processed. (see Exhaustion attachment).

5 of 12

IV.     C.O. IV Rick Wood (Grievance Coordinator's Duties and Neglegence to Log, Process and Maintain The Grievance Record

6.) C.O. IV Wood claimed that there is no record of Plaintiff submitting a IICR or giving a response to the IICR pertaining to Plaintiff's right shoulder injury. However, the Plaintiff's June 5, 2019 IICR response states that administration was made aware of the issue and will conduct an investigation into the claim. Mr. Wood, failed to process the Formal Grievance, and conduct a investigation that would of perseered key evidence of the incident (Video footage). Mr. Wood, also failed to process the Grievance Appeal, which is logged and tracked at ADC's Central Office. Therefore, there was no record of the Grievance Appeal. Mr. Wood, disclosed to transporting officers (C.O. II Duran and C.O. II Villicana) that a claim was made against them, which resulted in both officers submitting letters to terminate employment with ADC.

7.) According to ADC policy (D.O. 802) Wood had a duty and obligation to receive and log prisoners grievances. There was no valid excuse for his failure and neglect to perform his duty. Delegating his duties to a low level employee bends, deviates, manipulates, and tarnish the ADC policy and procedures established by ADC making exhaustion unavailable in the process.

8.) Plaintiff asked Mr. Wood in the presence of DWOP Elliot and SGT. Blake, what was the timeline to respond to Grievance Appeal and whether Plaintiff's Grievance Appeal was processed, logged, and filed. Mr. Wood responded stating that it was logged and filed, despite the fact that it was not.

V.    Legal Argument

A.) The Exhaustion Requirement (PLRA)

9.) 42 U.S.C. §1997e(a) states: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies AS ARE AVAilable are exhausted". To fully exhaust the available administrative remedies, a prisoner must pursue his grievance to the highest level at which some relief is available. Brown v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005) (Citing Booth, 532 U.S. at 738).

10). In this case Plaintiff's submission of the Grievance Appeal, which is the final step in the ADC grievance process, Pursuant to ADC policy. Plaintiff would not have been approved to file/submit the Grievance Appeal if he had not attempted to exhaust all prior remedies leading up to the Grievance Appeal that was available to him on the Unit where he was being housed. It's the Defendants position that Plaintiff should have pursued another course of action in filing the Grievance Appeal, but one Circuit Court recently found that "the prisons regulations, not facility practice, defines proper exhaustion" (Williams v. Wilkinson, 659 Fed.

Appdx. 512, 520-21 (10th Cir. 2016)(unpublished).

**B.) Timeliness of Plaintiff's Informal Complaint**

11). Plaintiff's injury to his right shoulder began on March 1, 2019. Plaintiff was told by Unit Medical Staff that his injury would heal. Plaintiff did not see a actual Provider/Doctor, and was not advised that his right shoulder would need surgery at that time, it was not until October of 2019. Plaintiff began the Grievance process on June 4, 2019, by filing an Inmate Informal Complaint/Resolution because he believed the injury was significantly more serious than Medical staff led him to believe, and that he had been misdiagnosed by Unit Medical staff. Defendants asserts that Plaintiff's Grievance process is untimely, because Plaintiff had (10) ten days from March 1, 2019 to begin the process, despite the misdiagnosis and the medical knowledge that his right shoulder injury would require surgery. One court found that a prisoner whose cancer was not diagnosed until long after the (14) fourteen day grievance timeline had passed had no available remedy without knowledge. Williams v. Hurley, 2007 WL 1202723, *6 (S.D. Ohio, Apr. 23, 2017). See also, Thomas v. Hickman, 2006 WL 286896, *9-10 (E.D. Cal., Oct. 6, 2006).

12.) The Nineth Circuit Court of Appeals has held that a district court should determine whether a plaintiff's grievance fell into an exception to the time limits, even though state officals had rejected it as untimely. Marella v. Terhune, 568 F.3d 1024, 1027, (9th Cir., 2009).

13.) Another court found that a grievance timeline is determined in the same fashion as legal court settings when a claim occurs, based on when the prisoner became knowledgeable of the injury and that he had a claim. Armitige V. Cherry, 2007 WL 1751738, *5 (S.D. Tex., May 30, 2007).

14. In reference to C.O. IV Wood's deposition (Doc. 47-1), he admitted that Plaintiff can file an IICR when he becomes aware and knowledgeable that he has indeed suffered serious physical injury. Therefore, rendering the Defendants argument MOOT pertaining to lack of exhaustion and untimely submission of IICR. Thus, this Court should grant the Plaintiff's exhaustion remedies exhausted pursuant to the above facts and legal authorities.

15.) Courts have found that prison officals failure or neglect to follow their own organizational policies barred summary Judgement. Labounty V. Johson, 253 F. Supp. 2d 496, 502-04 (W.D. N.Y., 2003); Kinzey V. Beard, 2006 WL 2829000, *10 (M.D. Pa., Sept. 1, 2006).

16.) Courts have found that when Supervisors (C.O. IV Grievance Coordinator) fail or neglect to fulfill their duties, and accept grievance's - when it is their duty to do so - that failure or neglect renders the exhaustion remedies unavailable. Smith V. Westchester County Department of Corrections, 2008 WL 361130, *3 (S.D.N.Y., Feb. 7, 2008).

Furthermore, even when the work is delegated to a lower level subordinate (C.O. III J. Vance), when it is in fact the direct duties of the Supervisor (Mr. Wood) to track, log, process, and maintain grievances, the exhaustion remedies become unavailable. Crawford V. Berkebile, 2008 WL 323155 *7-8 (N.D. Tex., Feb. 6, 2008).

17.) Plaintiff, submitted an Informal Complaint, Grievance, and Grievance Appeal to Mr. Wood's subordinate (C.O. III J. Vance), because he was directed to, and the fact that Mr. Wood did not make himself available to the inmate population to properly perform and fulfill his job duties as Grievance Coordinator. The foregoing documents in fact was misplaced or destroyed, excluding the copies Plaintiff retained. Dole V. Chandler, 438 F.3d 804, 809, 812 (7th Cir. 2006) (holding prisoner whose properly filed grievance simply vanished, and where no instructions to what to do about it, was reasonable to exhaust). The copies that Plaintiff was given back did not contain a Grievance numbers on it. Bullock V. Horn, 2000 WL 1839171, *2 (M.D. Pa., Oct. 31, 2000) (holding allegation that prison officials returned grievances unprocessed, without grievance numbers, making appeal impossible was sufficient to defeat a motion to dismiss concerning exhaustion).

18.) On several occasions Plaintiff conversed with Mr. Wood about his grievance, and the fact that he never received a response. Wood advise Plaintiff that the grievance and the grievance appeal had been processed, despite the truth that he never done so. Miller V. Norris, 247 F.3d 736, 740 (8th Cir. 2001) ("We believe that a remedy that

prison officals prevent a prisoner from utiliz[ing] is not an available remedy under §1997e(a)...".

VI.     Conclusion

19.) For all purposes Plaintiff exhausted all administrative remedies that were made available to him. Reasoning for Defendants believe they have grounds to file a Summary Judgement motion (failure to exhaust) is that the Grievance Coordinator's failures and neglect to perform job duties and follow the ADC policy establish in D.O. 802 created a self serving argument for failure to exhaust. For the foregoing reason's Plaintiff respectfully request that this Court Deny Defendants motion for Summary Judgement.

June 19th, 2023     Signed by: *Antjuan Brisco*
Date

Antjuan Brisco

Certificate OF Service

I hereby certify that on June 19th, 2023, I mailed a copy of the foregoing document (Via U.S. Mail), postage fee paid to the following:

Clerk of the U.S. District Court
Evo. A DeConcini Courthouse
405 W. Congress Street, Ste. 1500
Tucson, Arizona 85701-5010

Rising, Lopez, Lizardi PLLC
Attn: Daniel Torres
6363 North Swan Road Suite 151
Tucson, Arizona 85718-

June 19th, 2023          Signed by: Antjuan Brisco
     Date
                                    Antjuan Brisco